IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE STATE OF MISSOURI, | ) | |
| | ) | Civil Action No. |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE METROPOLITAN ST. LOUIS | ) | |
| SEWER DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiffs, the United States of America, by the authority of the Attorney General of the

United States and through the undersigned attorneys, acting at the request and on behalf of the

Administrator of the United States Environmental Protection Agency ("EPA"), and the State of

Missouri, by the authority of the Attorney General of Missouri and through its undersigned

counsel, acting at the request and on behalf of the Missouri Department of Natural Resources

("MDNR"), jointly file this complaint and allege as follows:

## NATURE OF THE ACTION

1. This is a civil action for injunctive relief and civil penalties brought against the Metropolitan St. Louis Sewer District ("MSD") pursuant to Sections 309(b) and (d) of the federal Clean Water Act ("CWA"), 33 U.S.C. §§ 1319(b) and (d), for MSD's numerous illegal discharges of pollutants in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), including those discharges of raw sewage from at least 300 constructed sanitary sewer overflows, and for violations of conditions established in the National Pollutant Discharge Elimination System ("NPDES") permits issued to MSD by MDNR, as authorized by the EPA under Section 402(b) of the CWA, 33 U.S.C. § 1342(b). This action is also brought under Section 504(a) of the CWA, 33 U.S.C. § 1364(a), to require MSD to take such actions as may be necessary to abate the imminent and substantial endangerment to the health of persons presented by MSD's sewer system, resulting in discharges of raw sewage to homes, yards, parks, playgrounds, and streets.

2. The State of Missouri has joined this action as a plaintiff pursuant to Section 309(e) of the CWA, 33 U.S.C. § 1319(e).

## JURISDICTION, VENUE, NOTICE, AND AUTHORITY

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345 and 1355.

4. Venue is proper in the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b) and Section 309(b) of the CWA, 33 U.S.C. § 1319(b), because it is the judicial district where MSD is located and where the alleged violations occurred.

5. Notice of the commencement of this action has been given to the State of Missouri, in accordance with Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

6. Authority to bring this action is vested in the Attorney General of the United States under Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519, and the State of Missouri, acting through the Attorney General, has joined as a party plaintiff pursuant to Section 309(e) of the CWA, 33 U.S.C. § 1319(e).

## DEFENDANT

7. Defendant MSD is a municipal corporation and political subdivision of the State of Missouri established under the laws of Missouri with the power to sue and be sued.

8. MSD is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5), and a "municipality" within the meaning of Section 502(4) of the CWA, 33 U.S.C. § 1362(4).

9. MSD is responsible for the operation and maintenance of nine wastewater treatment facilities and the associated separate sanitary sewer system, combined sanitary and stormwater sewer system ("combined sewer system"), and the stormwater sewer system serving residential, commercial and industrial entities throughout the City of St. Louis and nearly all St. Louis County, Missouri. MSD serves a population of approximately 1.4 million residents covering 525 square miles.

## STATUTORY BACKGROUND

10. The CWA is a comprehensive statute designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To achieve that goal, Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of pollutants" except as in compliance with an NPDES permit issued by the EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

11. The CWA defines the phrase "discharge of pollutants" to include "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

12. "Navigable waters" is defined as "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7).

13. Federal regulations promulgated pursuant to the CWA define the phrase "waters of the United States" to include, among other things, (i) all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide; (ii) all interstate waters; (iii) all other waters such as intrastate lakes, rivers and streams, including intermittent streams, the use, degradation, or destruction of which would or could affect interstate or foreign commerce; (iv) tributaries of waters of the United States; and (v) wetlands adjacent to these waters. 40 C.F.R. § 122.2.

14. "Pollutant" within the meaning of the CWA includes ". . . solid waste . . . sewage, garbage, sewage sludge . . . biological materials . . . and . . . industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

15. The CWA defines the term "point source" to mean "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

16. Section 402(a) of the CWA, 33 U.S.C. § 1342(a), establishes the NPDES permit system, and authorizes the EPA to issue permits for the discharge of pollutants, but only in compliance with Section 301 of the CWA, 33 U.S.C. § 1311, and such other conditions as the EPA determines are necessary to carry out the provisions of the CWA.

17. At all relevant times, the State of Missouri has been and continues to be authorized by

the Administrator of the EPA to implement the NPDES permit program for discharges into navigable waters within its jurisdiction pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

18.  Section 308(a) of the CWA, 33 U.S.C. § 1318(a), states:

Whenever required to carry out the objective of this chapter, including but not limited to (1) developing or assisting development of any effluent limitation, or other limitation, prohibition, or effluent standard, pretreatment standard, or standard of performance under this chapter . . . (3) any requirement established under this section; or (4) carrying out section . . . 1342 [NPDES program] . . . of this title

(A)  the Administrator shall require the owner or operator of any point source to:  (i) establish and maintain such records, (ii) make such reports . . . and (v) provide such other information as he may reasonably require.

19.  Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the EPA to commence a civil action for appropriate relief, including a permanent or temporary injunction, when any person violates, inter alia, Sections 301 or 308 of the CWA, 33 U.S.C. §§ 1311 or 1318, or violates any permit condition or limitation implementing such sections in a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

20.  Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates, inter alia, Sections 301 and 308 of the CWA, 33 U.S.C. §§ 1311 and 1318, or violates any permit condition or limitation implementing such sections in a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty not to exceed $27,500 per day for each violation occurring between January 30, 1997 and March 15, 2004; and $32,500 per day for each violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C.§ 3701 note); 61 Fed. Reg. 69,360

(December 31, 1996); and 69 Fed. Reg. 7121 (February 13, 2004), codified at 40 C.F.R. Part 19.

21. Section 504(a) of the CWA, 33 U.S.C. § 1364(a), provides that "[n]otwithstanding any other provision of this chapter, the Administrator [of the EPA] upon receipt of evidence that a pollution source or combination of sources is presenting an imminent and substantial endangerment to the health of persons . . . may bring suit on behalf of the United States . . . to immediately restrain any person causing or contributing to the alleged pollution to stop the discharge of pollutants causing or contributing to such pollution or to take such other action as may be necessary."

## GENERAL ALLEGATIONS

22. At all relevant times, MSD has owned and operated wastewater treatment facilities ("WWTFs") and their associated separate sanitary and combined sewer and stormwater collection and transmission systems (collectively referred to hereafter as "publicly owned treatment works" or "POTW"), which receive and treat wastewater and stormwater runoff from residential, commercial, industrial and combined sewage sources within the City of St. Louis and nearly all St. Louis County, Missouri.

23. MSD's extensive POTW, includes, without limitation, nine WWTFs, 294 pump stations, over 9,000 miles of sewers, and thousands of manholes/maintenance holes. Total sewage flow treated in MSD's WWTFs averages about 330 million gallons per day.

24. MSD's POTW is a "treatment works" as defined by Section 212(2)(A) and (B) of the CWA, 33 U.S.C. § 1292(2)(A) and (B), and a "publicly owned treatment works" as defined by the federal regulations implementing the CWA at 40 C.F.R. § 122.2 (cross-referencing the definition at 40 C.F.R. § 403.3(q)). MSD's POTW includes point sources within the meaning

of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

25.  At all relevant times, MSD has "discharged pollutants," including raw sewage, from its

POTW within the meaning of Sections 502(6) and (12) of the CWA, 33 U.S.C. §§ 1362(6) and

(12), from "point sources" within the meaning of Section 502(14) of the CWA, 33 U.S.C.

§ 1362(14), to waters of the United States, including, inter alia, the Mississippi River, Missouri

River, Meramec River, River Des Peres, and their associated tributaries, within the meanings of

Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7) and the federal regulations

implementing the CWA at 40 C.F.R. § 122.2.

26.  Pursuant to Section 402 of the Act, 33 U.S.C. § 1342 and the Missouri Clean Water

Law, Chapter 644 of the Missouri Revised Statutes, and the implementing regulations at 10

CSR 20-1.010 et seq., MDNR issued MSD NPDES permits for the following nine wastewater

treatment systems (collectively referred to hereafter as "MSD's NPDES Permits"):

a.    Baumgartner Lagoon was issued Permit Number MO-0088463, effective

November 20, 1998, and although originally set to expire on November 19, 2003, was

administratively extended in accordance with federal and state regulations, 40 C.F.R. § 122.6,

10 CSR 20-6.010(10)(E).  The current permit became effective February 20, 2004, was

modified on March 9, 2007, and expires on February 19, 2009.

b.    Bissell Point WWTF was issued Permit Number MO-0025178, effective

October 11, 1996, was modified November 8, 1996, and although originally set to expire on

October 10, 2001, was administratively extended in accordance with federal and state

regulations, 40 C.F.R. § 122.6, 10 CSR 20-6.010(10)(E).  The current permit became effective

December 30, 2005, was modified on January 27, 2006, and expires on December 29, 2010.

c.    Coldwater Creek WWTF was issued Permit Number MO-0025160, effective September 12, 1997, and although originally set to expire on October 10, 2001, was administratively extended in accordance with federal and state regulations, 40 C.F.R. § 122.6, 10 CSR 20-6.010(10)(E). The current permit became effective December 30, 2005, and expires on December 29, 2010.

d.    Fenton WWTF was issued Permit Number MO-0086126, effective March 23, 2001, was modified November 10, 2005, and although originally set to expire on March 22, 2006, has been administratively extended when MSD timely filed another permit application in accordance with federal and state regulations, 40 C.F.R. § 122.6, 10 CSR 20-6.010(10)(E).

e.    Grand Glaize WWTF was issued Permit Number MO-0101362, effective January 12, 2001, and although originally set to expire on January 11, 2006, was administratively extended in accordance with federal and state regulations, 40 C.F.R. § 122.6, 10 CSR 20-6.010(10)(E). The current permit became effective January 26, 2007, and expires on January 25, 2012.

f.    Lemay WWTF was issued Permit Number MO-0025151, effective November 8, 1996, was modified February 25, 2000, and although originally set to expire on October 10, 2001, was administratively extended in accordance with federal and state regulations, 40 C.F.R. § 122.6, 10 CSR 20-6.010(10)(E). The current permit became effective December 30, 2005, was modified on January 27, 2006, and expires on December 29, 2010.

g.    Lower Meramec WWTF was issued Permit Number MO-0100978, effective October 4, 2002, was modified March 23, 2007, and expires on October 3, 2007.

h. The New Lower Meramec WWTF was issued Permit Number MO-0127949, effective February 28, 2007, and expires on February 27, 2012.

i. Missouri River WWTF was issued Permit Number MO-0004391, effective July 19, 1996, and although originally set to expire on May 29, 2001, was administratively extended in accordance with federal and state regulations, 40 C.F.R. § 122.6, 10 CSR 20-6.010(10)(E). The current permit became effective December 30, 2005, was modified March 31, 2006, and expires on December 29, 2010.

27. At all relevant times, MSD's NPDES Permits for each WWTF have authorized MSD to discharge pollutants only from specified point sources (identified in each permit as one or more numbered "outfalls") to specified waters of the United States, subject to limitations and conditions set forth in the NPDES permits.

28. At all relevant times, two of the NPDES permits issued to MSD, Permit Number MO-0025178 for the Bissell Point WWTF and Permit Number MO-0025151 for the Lemay WWTF, authorize the discharge of pollutants from a total of 201 point sources other than a WWTP post-treatment outfall, those point sources being the combined sewer overflows outfalls identified in Attachment A to those permits, subject to certain limitations and conditions set forth in the NPDES permits.

29. At all relevant times, MSD has violated, and continues to violate, Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by failing to meet the conditions contained in the NPDES permits issued by MDNR, and by discharging pollutants without an NPDES permit.

30. MSD's unpermitted discharges of raw sewage from its POTW have resulted from multiple causes including, inter alia, inadequate flow capacity in the collection system and at the

wastewater treatment plants; inability to use wastewater pumps at capacity due to aged and corroded pipes and force mains; illegal and improper cross-connections between sanitary and stormwater sewers; poor maintenance of collection system including breaks and blockages in sewer pipes, force mains and manholes; excessive infiltration and inflow to the sanitary sewers and exfiltration from the sanitary sewers; and power failures, resulting from inadequate power backup at pump stations.

## FIRST CLAIM FOR RELIEF

### Unpermitted Discharges from Sanitary Sewer System

31. Paragraphs 1-30 are realleged and incorporated herein by reference.

32. At all relevant times, MSD has discharged and upon information and belief will continue to discharge pollutants containing raw sewage from its separate sanitary sewer collection and transmission system through at least 300 constructed overflows (hereinafter referred to as "constructed sanitary sewer overflows"). None of these discharges are permitted or otherwise authorized by the CWA.

33. On over 1,700 different occasions between at least January 1, 2000 and December 31, 2005, and upon information and belief continuing to the present, MSD has discharged pollutants containing raw sewage from point sources within its separate sanitary sewer collection and transmission system, including without limitation manholes, pump stations and sewer lines, that were not identified in its NPDES permits as authorized outfalls (hereinafter referred to as "sanitary sewer overflows" or "SSOs"). These SSOs are not permitted or otherwise authorized by the CWA.

34. Each day of each discharge referred to in Paragraphs 32 and 33 constitutes a separate

violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

35. MSD is liable for civil penalties of up to $27,500 per day for each violation occurring between January 30, 1997 and March 15, 2004; and up to $32,500 per day for each violation occurring after March 15, 2004, pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d); the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C.§ 3701 note); 61 Fed. Reg. 69,360 (December 31, 1996); and 69 Fed. Reg. 7121 (February 13, 2004), codified at 40 C.F.R. Part 19.

36. Unless enjoined by an order of the Court, MSD will continue to discharge pollutants without a permit in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

## SECOND CLAIM FOR RELIEF

### Unpermitted Discharges from Combined Sewer System

37. Paragraphs 1-30 are realleged and incorporated herein by reference.

38. On over 500 different occasions between at least January 1, 2000 and December 31, 2005, and upon information and belief continuing to the present, MSD has discharged into the Mississippi River and River Des Peres and their tributaries more than 500 million gallons of raw sewage from various points sources within MSD's combined sewer collection and transmission system, i.e., point sources that are not specified in Attachment A of the NPDES permits for the Bissell Point WWTF (Permit Number MO-0025178) and the Lemay WWTF (Permit Number MO-0025151) or otherwise authorized by the CWA.

39. Each day of each discharge referred to in Paragraph 38 constitutes a separate violation of Sections 301(a) and 402 of the CWA, 33 U.S.C. § 1311(a) and 1342.

40. MSD is liable for civil penalties of up to $27,500 per day for each violation occurring between January 30, 1997 and March 15, 2004; and up to $32,500 per day for each violation occurring after March 15, 2004, pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d); the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C.§ 3701 note); 61 Fed. Reg. 69,360 (December 31, 1996); and 69 Fed. Reg. 7121 (February 13, 2004), codified at 40 C.F.R. Part 19.

41. Unless enjoined by an order of the Court, MSD will continue to discharge pollutants from unpermitted discharge points within its combined sewer collection and transmission system in violation of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342.

### THIRD CLAIM FOR RELIEF

### Emergency Powers of Section 504 of CWA

42. Paragraphs 1-30 are realleged and incorporated herein by reference.

43. On at least 7,000 occasions between at least 2001 and 2005, and upon information and belief continuing to the present, MSD has discharged pollutants containing raw sewage from its POTW onto public and private property, including without limitation, streets, yards, public parks, and playground areas, and into buildings, including homes, located in the City of St. Louis and St. Louis County, where persons have or may have come into contact with such sewage.

44. MSD's POTW as described in Paragraphs 22 and 23 above is a "pollution source or combination of sources" as that phrase is used in Section 504(a) of the CWA, 33 U.S.C. § 1364(a).

45. MSD's discharges of raw sewage contain pathogens, including without limitation,

bacteria, viruses, parasitic organisms, intestinal worms, and boroughs (inhaled molds and fungi). These pathogens may cause diseases ranging in severity from mild gastroenteritis (causing stomach cramps and diarrhea) to ailments such as cholera, dysentery, infectious hepatitis, and severe gastroenteritis. Groups facing greater risks are children, the elderly, immuno-compromised groups, and pregnant women. The endangerment from raw sewage remains imminent until the area impacted by the sewage is adequately cleaned and disinfected. MSD's discharges of raw sewage, therefore, are "presenting an imminent and substantial endangerment to the health of persons" who may come into contact with them, within the meaning of Section 504(a) of the CWA, 33 U.S.C. § 1364(a).

46. MSD as the owner and operator of the POTW is a "person causing or contributing to the alleged pollution" from the unpermitted discharges of raw sewage within the meaning of Section 504(a) of the CWA, 33 U.S.C. § 1364(a).

47. Upon information and belief, MSD's discharges of raw sewage will continue unless enjoined by this Court.

48. Pursuant to Section 504(a), the United States seeks an order requiring MSD: 1) to take measures (such as increasing sewer pumping and treatment capacity, improving operation and maintenance, and installing backflow devices) to prevent or minimize to the greatest extent possible the discharge of sewage into streets, yards, parks, playgrounds, buildings and other areas where persons may come into contact with it when the discharge was caused by conditions in its POTW; 2) to develop a comprehensive response plan to follow when discharges occur caused by conditions in its POTW to clean up and disinfect the affected property by qualified personnel as promptly as possible so as to remove endangerment to public health; 3) to improve public

outreach and communications to notify the public of the occurrence and causes of backups and warn the public about the risks associated with contacting sewage; and 4) to take such other action as may be necessary.

## FOURTH CLAIM FOR RELIEF

### Violation of the Proper Operation and Maintenance Condition (Standard Condition I.B.3&4) in MSD's NPDES Permits

49. Paragraphs 1-30 are realleged and incorporated herein by reference.

50. Pursuant to 40 C.F.R. § 122.41(e), each of MSD's NPDES Permits contains the following Standard Condition at Part I.B.3: "Permittees shall operate and maintain facilities to comply with the Missouri Clean Water Law and applicable permit conditions. Operators or supervisors of operations at publicly owned or publicly regulated wastewater treatment facilities shall be certified in accordance with 10 CSR 209.020(2) and any other applicable law or regulation." Part I.B.4 of each of MSD's Permits require that "[t]he permittee shall take all necessary steps to minimize any adverse impact to waters of the state resulting from noncompliance with any effluent limitations specified in this permit or set forth in the Missouri Clean Water Law and Regulations . . .." (hereafter Part I.B.3&4 collectively referred to as "Proper Operation and Maintenance Condition").

51. Many of the illegal discharges alleged in Paragraphs 32, 33, 38, and 43 above, resulted, in whole or in part, from MSD's failure to comply with the Proper Operation and Maintenance Condition of its NPDES Permits (Part I.B.3&4), in violation of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342.

52. Each day MSD failed to comply with the Proper Operation and Maintenance Condition

of its NPDES Permits (Part I.B.3&4) constitutes a separate violation of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342.

53. MSD is liable for civil penalties of up to $27,500 per day for each violation occurring between January 30, 1997 and March 15, 2004; and up to $32,500 per day for each violation occurring after March 15, 2004, pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d); the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C.§ 3701 note); 61 Fed. Reg. 69,360 (December 31, 1996); and 69 Fed. Reg. 7121 (February 13, 2004), codified at 40 C.F.R. Part 19.

54. Unless enjoined by an order of the Court, MSD will continue to violate Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by failing to comply with the Proper Operation and Maintenance Condition of its NPDES Permits (Part I.B.3&4).

## FIFTH CLAIM FOR RELIEF

### Violation of the Backup Power Condition (Standard Condition I.B.7) in MSD's NPDES Permits

55. Paragraphs 1-30 are realleged and incorporated herein by reference.

56. Pursuant to 40 C.F.R. § 122.41(e), each of MSD's NPDES Permits contains the following Standard Condition at Part I.B.7:

**Power Failures**
In order to maintain compliance with the effluent limitations and other provisions of this permit, the permittee shall either:

a. in accordance with the "Schedule of Compliance", provide an alternative power source sufficient to operate the wastewater control facilities; or,

b. if such alternative power source is not in existence, and no date for its implementation appears in the Compliance Schedule, halt or otherwise control production and all discharges upon the reduction, loss, or failure of the primary source of power to the wastewater control facilities.

(hereafter referred to as "Backup Power Condition").

57. On at least 73 different occasions between at least January 1, 2000 and February 9, 2006, and upon information and belief continuing to the present, MSD has discharged raw sewage as a result of a power or electrical failure at one of its pumping stations.

58. Each day MSD failed to comply with the Backup Power Condition of its NPDES Permits (Part I.B.7) constitutes a separate violation of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342.

59. MSD is liable for civil penalties of up to $27,500 per day for each violation occurring between January 30, 1997 and March 15, 2004; and up to $32,500 per day for each violation occurring after March 15, 2004, pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d); the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C.§ 3701 note); 61 Fed. Reg. 69,360 (December 31, 1996); and 69 Fed. Reg. 7121 (February 13, 2004), codified at 40 C.F.R. Part 19.

60. Unless enjoined by an order of the Court, MSD will continue to violate Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by failing to comply with the Backup Power Condition in its NPDES permits (Part I.B.7).

## SIXTH CLAIM FOR RELIEF

### Violation of the Bypass Prohibition Condition
### (Standard Condition I.B.5) in MSD's NPDES Permits

61. Paragraphs 1-30 are realleged and incorporated herein by reference.

62. Pursuant to 40 C.F.R. § 122.41(m), each of MSD's NPDES Permits contains a Standard Condition at Part I.B.5, which prohibits bypasses except "where unavoidable to prevent loss of life, personal injury, or severe property damages . . ." (hereafter referred to as "Bypass Prohibition Condition"). The term "bypass" means "the intentional diversion of waste streams from any portion of a treatment facility." 40 C.F.R. § 122.41(m)(1)(i).

63. Since at least January 1, 2000, and upon information and belief continuing to the present, MSD has failed to comply with the Bypass Prohibition Condition of its NPDES Permits (Part 1.B.5) by allowing bypasses, as described in Paragraph 33, that were not necessary to prevent loss of life, personal injury, or severe property damages, in violation of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342.

64. Each day MSD failed to comply with the Bypass Prohibition Condition of MSD's NPDES Permits (Part 1.B.5) constitutes a separate violation of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342.

65. MSD is liable for civil penalties of up to $27,500 per day for each violation occurring between January 30, 1997 and March 15, 2004; and up to $32,500 per day for each violation occurring after March 15, 2004, pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d); the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C.§ 3701 note); 61

Fed. Reg. 69,360 (December 31, 1996); and 69 Fed. Reg. 7121 (February 13, 2004), codified at 40 C.F.R. Part 19.

66. Unless enjoined by an order of the Court, MSD will continue to violate Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by failing to comply with the Bypass Prohibition Condition of its NPDES Permits (Part I.B.5).

## SEVENTH CLAIM FOR RELIEF

### Violation of the Noncompliance Reporting Condition (Standard Condition I.B.2.b) in MSD's NPDES Permits

67. Paragraphs 1-30 are realleged and incorporated herein by reference.

68. Pursuant to 40 C.F.R. § 122.41(l)(6), each of MSD's NPDES Permits contains the following Standard Condition at Part I.B.2.b:

> **Noncompliance Notification**
> b.  Twenty-four hour reporting. The permittee shall report any noncompliance which may endanger health or the environment. Any information shall be provided orally within 24 hours from the time the permittee becomes aware of the circumstances. A written submission shall also be provided within 5 days of the time the permittee becomes aware of the circumstances . . .

(hereafter referred to as "Noncompliance Reporting Condition").

69. Upon information and belief, MSD has failed to comply with the Noncompliance Reporting Condition of MSD's NPDES Permits (Part I.B.2.b) in violation of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by failing to provide any notice or report unpermitted discharges of raw sewage, as described in Paragraph 32 above, that may endanger health or the environment.

70. MSD is liable for civil penalties of up to $27,500 per day for each violation occurring

between January 30, 1997 and March 15, 2004; and up to $32,500 per day for each violation occurring after March 15, 2004, pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d); the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C.§ 3701 note); 61 Fed. Reg. 69,360 (December 31, 1996); and 69 Fed. Reg. 7121 (February 13, 2004), codified at 40 C.F.R. Part 19.

71. Unless enjoined by an order of the Court, upon information and belief, MSD will continue to violate Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by failing to comply with the Noncompliance Reporting Condition in its NPDES Permits (Part I.B.2.b).

## EIGHTH CLAIM FOR RELIEF

### Failure to Submit Long Term CSO Control Plan
### Pursuant to Part D.1 of MSD's NPDES Permits and CWA § 308 Request

72. Paragraphs 1-30 are realleged and incorporated herein by reference.

73. MSD's currently effective NPDES permits for Bissell Point and Lemay WWTFs contain a permit condition at Part D.1 that requires MSD to submit a Long Term Control Plan ("LTCP") consistent with the EPA's CSO Control Policy, 59 Fed. Reg. 18688 (April 19, 1994), by August 17, 2006.

74. By letter dated August 17, 2004, the EPA also issued MSD an Information Request under Section 308(a) of the CWA, 33 U.S.C. § 1318(a) ("CWA § 308 Request"), requiring MSD to submit its LTCP that ensures MSD's combined sewer overflows comply with the requirements of the MSD's Permits and the CWA, including EPA's CSO Control Policy, no later than two

years from the date of the CWA § 308 Request - August 17, 2006. EPA's CWA § 308 Request also requires MSD to fully implement all measures under the LTCP, as early as possible, but in no event later than August 1, 2019.

75. Since August 18, 2006, and continuing to the present, MSD has failed to submit a complete LTCP called for in EPA's CWA § 308 Request, in violation of Section 308(a) of the CWA, 33 U.S.C. § 1318(a), as well as required by the permit condition Part D.1 of MSD's currently effective NPDES permits for the Bissell Point WWTF and the Lemay WWTF, in violation of Section 402 of the CWA, 33 U.S.C. § 1342.

76. Each day since August 18, 2006, MSD has failed to submit a full and complete LTCP constitutes a separate violation of Sections 308(a) and 402 of the CWA, 33 U.S.C. §§ 1318(a) and 1342.

77. MSD is liable for civil penalties of up to $32,500 per day for each violation, pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d); the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C.§ 3701 note); 61 Fed. Reg. 69,360 (December 31, 1996); and 69 Fed. Reg. 7121 (February 13, 2004), codified at 40 C.F.R. Part 19.

78. Unless enjoined by an order of the Court, MSD will continue to violate Sections 308(a) and 402 of the CWA, 33 U.S.C. §§ 1318(a) and 1342, by failing to comply with the CWA § 308 Request and the permit condition in its NPDES permits (Part D.1).

## NINTH CLAIM FOR RELIEF

### Violation of the General Criteria Special Condition in MSD's NPDES Permits

79. Paragraphs 1-30 are realleged and incorporated herein by reference.

80. Except for the two permits listed in Paragraph 81 below, all MSD's past and current

NPDES Permits contain the following General Criteria Special Condition:[1]

    (b) General Criteria. The following water quality criteria shall be applicable to all waters of the state at all times including mixing zones. No water contaminant, by itself or in combination with other substances, shall prevent the waters of the state from meeting the following conditions:

        (1) Waters shall be free from substances in sufficient amounts to cause the formation of putrescent, unsightly or harmful bottom deposits or prevent full maintenance of beneficial uses;

        (2) Waters shall be free from oil, scum and floating debris in sufficient amounts to be unsightly or prevent full maintenance of beneficial uses;

        (3) Waters shall be free from substances in sufficient amounts to cause unsightly color or turbidity, offensive odor or prevent full maintenance of beneficial uses;

        (4) Waters shall be free from substances or conditions in sufficient amounts to result in toxicity to human, animal or aquatic life;

        (5) There shall be no significant human health hazard from incidental contact with the water.

      \*\*\*

81. The General Criteria Special Condition in MSD's NPDES Permits for Lemay WWTP

---

[1]See General Criteria Special Condition of MSD's NPDES Permits for Baumgartner Lagoon (Part C.6 of prior permit, effective 11/20/98, and Part C.7 of current permit, effective 2/20/04); Bissell Point WWTP (Part C.4(b) of current permit, effective 12/30/05); Coldwater Creek WWTP (Part C.10 of prior permit, effective 9/12/97, and Part C.6(b) of current permit, effective 12/30/05); Fenton WWTF (Part C.6(b) of current permit, effective 3/23/01); Grand Glaize WWTF (Part C.11 of prior permit, effective 1/12/01, and Part D.9(b) of current permit, effective 1/26/07); Lemay WWTP (Part C.6(b) of current permit, effective 12/30/05); Lower Meramec WWTP (Part C.10 of current permit, effective 10/4/02); New Lower Meramec WWTP (Part C.7 of current permit, effective 2/28/07); Missouri River WWTF (Part C.12 of prior permit, effective 7/19/1996, and Part C.6(b) of current permit, effective 12/30/05).

(Part C.10) (effective November 8, 1996) and Bissell Point WWTP (Part C.12) (effective October 11, 1996) is similar to Paragraph 80 above, stating that "[d]ischarges shall not cause violations of the general criteria in the Water Quality Standards at 10 CSR 20-7.031(3) including, but not limited to the following criteria:" and then lists the identical language at Paragraph 80 above at (b)(1) - (4), and excluding (5).

82. Many of the unpermitted discharges described above in Paragraphs 32, 33, and 38 created conditions whereby the receiving waters contained one or more of the following: putrescent, unsightly or harmful bottom deposits; oil, scum and floating debris in sufficient amounts to be unsightly or prevent full maintenance of beneficial uses; and substances resulting in unsightly color, turbidity, and offensive odor. In addition, these discharges of raw sewage contain organic matter, bacteria and potential pathogens in amounts that may result in toxicity to animal and aquatic life. Pathogens in raw sewage can also cause a number of diseases in humans such as gastroenteritis, dysentery, and cholera. These diseases are communicable, and may result in toxicity to humans and/or create a significant human health hazard from incidental contact with these waters.

83. On each occasion described in Paragraph 82 above, and upon information and belief continuing to the present, MSD failed to comply with the General Criteria Special Conditions of its NPDES Permits in violation of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342.

84. Each day MSD failed to comply with the General Criteria Special Condition of its NPDES Permits constitutes a separate violation of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342.

85. MSD is liable for civil penalties of up to $27,500 per day for each violation occurring between January 30, 1997 and March 15, 2004; and up to $32,500 per day for each violation occurring after March 15, 2004, pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d); the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C.§ 3701 note); 61 Fed. Reg. 69,360 (December 31, 1996); and 69 Fed. Reg. 7121 (February 13, 2004), codified at 40 C.F.R. Part 19.

86. Unless enjoined by an order of the Court, MSD will continue to violate Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by failing to comply with the General Criteria Special Condition in its NPDES Permits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the United States of America and the State of Missouri, respectfully request that this Court provide the following relief:

1. A permanent injunction enjoining Defendant MSD from any and all ongoing and future violations of the CWA by ordering compliance with the Act;

2. A permanent injunction directing Defendant MSD to take all steps necessary to come into permanent and consistent compliance with the prohibition on unpermitted discharges contained in Section 301(a) of the CWA;

3. A permanent injunction directing MSD to take all steps as are necessary to prevent or minimize the imminent and substantial risk to human health posed by pollutants (raw sewage) originating in its POTW, in accordance with Section 504(a) of the CWA, 33 U.S.C. § 1364(a);

4. A permanent injunction directing Defendant MSD to take all steps necessary to achieve permanent and consistent compliance with the CWA and the regulations promulgated thereunder, and all terms and conditions of its NPDES permits;

5. A permanent injunction requiring MSD to submit and implement a full and complete Long Term CSO Control Plan in compliance with Section 308(a) of the CWA, 33 U.S.C. § 1318(a), and the permit condition (Part D.1) of MSD's Permits for the Bissell Point and Lemay WWTFs;

6. A judgment assessing civil penalties against Defendant MSD and in favor of the United States, not to exceed $27,500 per day for each violation of the CWA which occurred between January 30, 1997 and March 14, 2004, and not to exceed $32,500 per day for each violation of the CWA which occurred on or after March 15, 2004;

7. Order Defendant MSD to mitigate the effects of each of their violations;

8. Award the United States its costs and disbursements in this action; and

9. Grant such other and further relief as this Court deems appropriate.

Dated: June 11, 2007

Respectfully submitted,
FOR THE UNITED STATES OF AMERICA:

RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
Washington, D.C. 20530

/s/ Kathryn C. Macdonald
KATHRYN C. MACDONALD
(NY Bar Registration Number 2597037)
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Telephone: (202) 353-7397
Facsimile: (202) 514-4180


CATHERINE L. HANAWAY
United States Attorney

/s/ Suzanne J. Moore
SUZANNE J. MOORE
Assistant United States Attorney
Thomas F. Eagleton Courthouse
111 S. 10th Street, 20th Floor
St. Louis, Missouri 63102
Telephone: (314) 529-2200
Facsimile: (314) 539-2777


FOR THE STATE OF MISSOURI:


JEREMIAH W. (JAY) NIXON
Attorney General


JOSEPH P. BINDBEUTEL
Senior Chief Counsel
Agriculture and Environment Division
MBE #28656
Broadway Building, 8th Floor
P.O. Box 899
Jefferson City, Missouri 65102
Telephone: (573) 751-8805
Facsimile: (573) 751-8796

OF COUNSEL FOR THE UNITED STATES:

MARTHA R. STEINCAMP
Regional Counsel
MELISSA A.C. BAGLEY
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 7
901 North 5th Street
Kansas City, Kansas 66101
(913) 551-7246

ALAN MORRISSEY
Senior Attorney
U.S. Environmental Protection Agency Headquarters
Ariel Rios Building
1200 Pennsylvania Avenue, N. W.
Mail Code: 2243A
Washington, DC 20460
(202) 564-4026

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of June, 2007, I caused to be served a true and correct copy of the foregoing, **UNITED STATES' COMPLAINT**, U.S. AND THE STATE OF MISSOURI V. METROPOLITAN ST. LOUIS SEWER DISTRICT, upon the parties listed below by means of the method(s) indicated:

**Jeffrey L. Theerman**, Executive Director
METROPOLITAN ST. LOUIS SEWER DISTRICT
2350 Market Street
St. Louis, MO 63103-2555
Tel: 314-768-6245
Fax: 314-768-6279
E-mail: jlthee@stlmsd.com

[ ] U.S. Mail Postage Prepaid
[ ] Hand Delivered
[X] Overnight Mail
[ ] Facsimile

**Randy E. Hayman, Esq.**
METROPOLITAN ST. LOUIS SEWER DISTRICT
2350 Market Street
St. Louis, MO 63103-2555
Tel: 314-768-6209
Fax: 314-768-6279
Email: rhayman@stlmsd.com

[ ] U.S. Mail Postage Prepaid
[ ] Hand Delivered
[X] Overnight Mail
[ ] Facsimile

**Terry J. Satterlee, Esq.**
Shook, Hardy & Bacon
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Tel: 816-559-2374
Fax: 816-421-5547
Email: TSATTERLEE@shb.com

[ ] U.S. Mail Postage Prepaid
[ ] Hand Delivered
[X] Overnight Mail
[ ] Facsimile

/s/ Kathryn C. Macdonald
Kathryn C. Macdonald
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611 Benjamin Franklin Station
Washington, D.C. 20044-7611
Tel: (202) 353-7397
Fax: (202) 514-4180
Email: kathryn.macdonald@usdoj.gov

# *United States District Court*
## EASTERN DISTRICT OF MISSOURI
## NOTICE OF LAWSUIT AND
## REQUEST FOR WAIVER OF SERVICE OF SUMMONS

---

### * * Plaintiff to Complete Gray Area * *

---

TO:  **Raymond E. Hayman, Esq.** _____

(Name of defendant)
(as  **General Counsel**  of  **Metropolitan St. Louis Sewer District** _____ )
      (Title)                 (Name of business)

A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint is attached to this notice. It has been filed in the United States District Court for the Eastern District

of Missouri and has been assigned docket number _____.

This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver within __30__ days after the date designated below as the date on which this Notice and Request is sent. I enclose a stamped and addressed envelope (or other means of cost-free return) for your use. An extra copy of the waiver is also attached for your records.

**If you comply with this request and return the signed waiver to the undersigned, it will be filed with the court and no summons will be served on you.** The action will then proceed as if you had been served on the date the waiver is filed, except you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the extent authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth on the foot of the waiver form.

I affirm that this request is being sent to you on behalf of the plaintiff, this _11_ day of _June_ , _2007_.

_Kathynn H. McCarthy_

Signature of Plaintiff's Attorney or
Unrepresented Plaintiff

---

**DUTY TO AVOID UNNECESSARY COSTS OF SERVICE OF SUMMONS**

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer, than if the summons had actually served, when the request for waiver of service was received.



# *United States District Court*
## EASTERN DISTRICT OF MISSOURI

## WAIVER OF SERVICE OF SUMMONS

**NOTICE TO DEFENDANT(S)**

* * Plaintiff To Complete Gray Area * *

To: **Kathryn C. Macdonald**
(Name of plaintiff's attorney or unrepresented plaintiff)

I acknowledge receipt of your request that I waive service of a summons in the action of:

Case Caption: **U.S. et al. v. The Metropolitan St. Louis Sewer District**

Case Number: _____

in the United States District Court for the Eastern District of Missouri. I have also received a copy of the complaint in this action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after ____06/11/2007_____,
(Date Waiver sent)

or within 90 days after date if the request was sent outside the United States.

---

**DEFENDANT'S ACKNOWLEDGMENT OF WAIVER OF SERVICE**

_____          _____
Date                                              Print name

                                                    _____
                                                    Signature

as _____       of _____
(Officer or Agent)                          (Corporation or Association)

                                                    _____
                                                    Address

                                                    _____
                                                    City, State, Zip Code