UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| and | ) ) | |
| MISSOURI COALITION FOR THE ENVIRONMENT FOUNDATION, | ) ) ) | No. 4:07-CV-1120 CEJ |
| Plaintiff/Intervenor | ) ) | |
| vs. | ) ) | |
| THE METROPOLITAN ST. LOUIS SEWER DISTRICT, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on several motions related to counterclaims brought by defendant the Metropolitan St. Louis Sewer District (MSD), on a motion to dismiss claims brought by plaintiff-intervenor Missouri Coalition for the Environment Foundation (the Coalition), and on the motion of the Missouri Industrial Energy Consumers (MIEC) to intervene. The issues are fully briefed.

### I. Background

This is an action brought by the United States Environmental Protection Agency (EPA) and the State of Missouri alleging violations of the Clean Water Act, 33 U.S.C. § 1251 *eq seq.*, and violations of National Pollution Discharge Elimination System (NPDES) permits issued to MSD by the Missouri Department of Natural

Resources, pursuant to authorization by the EPA. The State of Missouri has joined this action as a plaintiff.

Plaintiff-intervenor Missouri Coalition for the Environment Foundation (the Coalition) is a non-profit corporation formed to preserve and enhance the natural physical environment. The Coalition filed an intervenor complaint and intervened in this action under 33 U.S.C. § 1365(b). The Coalition's complaint also alleges violations of the Clean Water Act and the NPDES permits issued to MSD. The EPA, the State of Missouri, and the Coalition seek civil penalties for the alleged violations, costs of litigation, and injunctive relief.

## II.  Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint.  The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1965 (May 21, 2007) citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").  The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is

entitled to present evidence in support of his claim.  <u>Id.</u>  A
viable complaint must include "enough facts to state a claim to
relief that is plausible on its face." <u>Bell Atlantic Corp.</u>, 127 S.
Ct. at 1974.  <u>See also</u> <u>id.</u> at 1969 ("no set of facts" language in
<u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), "has earned its
retirement.")  "Factual allegations must be enough to raise a right
to relief above the speculative level." <u>Id.</u> at 1965.

**III.** **<u>Discussion</u>**

**A.** **<u>Coalition's Request for Litigation Costs and Civil
Penalties</u>**

Defendant MSD seeks to dismiss the portion of the Coalition's
intervenor complaint that seeks civil penalties and costs of
litigation, for failure to state a claim upon which relief can be
granted, pursuant to Rule 12(b)(6), Fed. R. Civ. P.  MSD also moves
to dismiss any claims in the intervenor complaint based on 33
U.S.C. § 1365(a).  The Coalition responds that although its
complaint alludes to Section 1365(a), it is clear from the
complaint that Coalition is not seeking relief under that
provision. The Court agrees, and finds that it is clear that
Coalition seeks relief under 33 U.S.C. § 1365(b)(1)(B). The Court
thus must determine whether, in an action brought pursuant to that
subsection, a citizens' group is entitled to recover civil
penalties, attorney's fees, and costs (including expert witness
fees).

**<u>Civil Penalties</u>**

MSD asserts that the Coalition is not entitled to seek civil penalties in a suit brought pursuant to Section 1365(b), because the United States and the State of Missouri are diligently prosecuting this action, and allowing a citizens' group to seek penalties could duplicate and/or impede the government's enforcement efforts.

The Coalition argues that Section 1365(b)(1)(B) contains no provision limiting the type of relief that an intervenor may seek, but merely bars the commencement of a separate "action," not the assertion of a claim. The Coalition asserts that the supervising court can prevent double recovery and ensure that the intervenor's remedies do not interfere with the government's enforcement efforts.

Title 33, Section 1365, United States Code, provides in relevant part:

(a) Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf – (1) against any person (including (I) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator. . . .

(b) No action may be commenced (1) under subsection (a)(1) of this section (A) prior to sixty days after the plaintiff has given notice of the alleged violation (I) to the Administrator, (ii) to the State in which the alleged violation occurs, and

4

(iii) to any alleged violator of the standard, limitation, or order, or (B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States . . . to require compliance with the standard, limitation, or order, but in any such action in a Court of the United States a citizen may intervene as a matter of right.

Title 33, Section 1319(g)(6) United States Code, provides in relevant part:

(A) Actions taken by the Administrator . . . under this subsection shall not affect or limit the Administrator's . . . authority to enforce any provision of this chapter; except that any violation – (I) with respect to which the Administrator. . . has commenced and is diligently prosecuting an action under this subsection . . . shall not be the subject of a civil penalty action under . . . section 1365 of this title.

(B) The limitations contained in subparagraph (A) on civil penalty actions under section 1365 of this title shall not apply with respect to any violation for which (I) a civil action under section 1365(a)(1) of this title has been filed prior to commencement of an action under this subsection, or (ii) notice of an alleged violation of section 1365(a)(1) of this title has been given in accordance with section 1365(b)(1)(A) of this title prior to commencement of an action under this subsection and an action under section 1365(a)(1) of this title . . . is filed before the 120th day after the date on which such notice is given.

The United States Supreme Court interpreted the statutory scheme of Section 1365 in <u>Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.</u>, 484 U.S. 49 (1987). It found that if the Administrator or a State "commences enforcement action" within sixty days of the citizen's notice of intent to sue, a citizen suit

is barred, "presumably because governmental action has rendered it unnecessary." Id. at 59-60. The Court continued

> It follows logically that the purpose of notice to the alleged violator is to give it an opportunity to bring itself into complete compliance with the [Clean Water] Act and thus likewise render unnecessary a citizen suit. . . . The bar on citizen suits when governmental enforcement action is underway suggests that the citizen suit is meant to supplement rather than to supplant governmental action.

Id.

The Court went on to conclude that the supplementary nature of citizen suits would be undermined if citizens could seek civil penalties to redress a past violation of the Clean Water Act, even if the violator had addressed the problem and was now in compliance with the Act. Such a result would transform the citizen's role "from interstitial to potentially intrusive," a result the Court concluded Congress did not intend. Id. at 60-61.

A citizens' group thus can seek civil penalties under Section 1365(a). The citizen group's role in an action is much more limited under Section 1365(b), and that role does not extend to seeking civil penalties when the Administrator or a State (or, as here, both) are pursuing an enforcement action against an alleged violator. In this action, the United States and the State of Missouri allege numerous violations of the Clean Water Act and seek civil penalties and injunctive relief. Allowing the Coalition to seek civil penalties would render the Coalition's intervention in this action "potentially intrusive."[1]

---

[1] This result is consistent with the holding in Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S.

The Court concludes that, as a matter of law, as long as the United States and the State of Missouri are diligently prosecuting this action, the Coalition may not seek civil penalties for MSD's alleged violations of the Clean Water Act. Accordingly, the Coalition's claims for civil penalties fail to state a claim upon which relief can be granted, and the Court will dismiss the Coalition's requests for such penalties.

**Costs and Attorney's Fees**

MSD moves to dismiss the Coalition's request for litigation costs and attorney's fees, asserting that costs and fees are

_____

167 (2000), where the Court noted that "the federal government retains the power to foreclose a citizen suit by undertaking its own action. 33 U.S.C. § 1365(b)(1)(B)." Id. at 188 n 4. Cf. Atlantic States Legal Foundation, Inc. v. Koch Refining Co., 681 F.Supp. 609, 611 n 2 (D. Minn. 1988)(disagreed with on other grounds by United States Environmental Protection Agency v. City of Green Forest, Arkansas, 921 F.2d 1394 (8th Cir. 1991), citing 33 U.S.C. § 1319(g)(6)(A)) ("In the event either the administrator or the state commences a civil or criminal action to enforce compliance with the standards" within sixty days following a citizen's notice of intent to sue, "then the citizen-plaintiff is barred from commencing its own suit and is limited to intervention in the government action. . . . Moreover, a citizen suit seeking civil penalties (as opposed to injunctive relief) is also barred if the administrator or state commences an administrative civil penalty assessment within the sixty-day period" following notice of intent to sue). And cf. Comfort Lake Ass'n v. Dresel Contracting, Inc., 138 F.3d 351, 357 (8th Cir. 1998) (construing 33 U.S.C. § 1319(g) and finding that an administrative enforcement agreement between the EPA or an equivalent state department "will preclude a pending citizen suit claim for civil penalties if the agreement is the result of a diligently prosecuted enforcement process." Such an agency enforcement action is "entitled to considerable deference if we are to achieve the Clean Water Act's stated goal of preserving the 'primary responsibilities and rights of States to prevent, reduce, and eliminate pollution.'" Id., quoting 33 U.S.C. § 1251(b).)

available only to the prevailing party in a citizens' suit brought pursuant to 33 U.S.C. § 1365(a), but not to an intervenor under 33 U.S.C. § 1365(b) such as the Coalition. The Coalition argues that it is entitled to recover attorney's fees if it is a prevailing party under Section 1365(d).

Title 33, Section 1365(d), United States Code provides: "The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." On its face, the statute thus suggests that the court has discretion to determine when an award of fees is appropriate, and which party or parties are entitled to an award. A district court in a Clean Water Act enforcement action "is vested with wide discretion and brings to bear an ability to weigh against the total background" of the litigation "the significance of any contributions and the appropriateness of any award of fees and costs." <u>United States v. Comunidades Unidas Contra la Contaminacion</u>, 204 F.3d 275, 283 (1st Cir. 2000).

"Parties are considered 'prevailing parties' for the purposes of attorney's fees 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" <u>United States v. Maine Dept. of Transportation</u>, 980 F.Supp. 546, 549 (D. Me. 1997). In <u>Maine Department of Transportation</u>, the court determined that the plaintiff-intervenors were not prevailing parties because they "did not seek any

8

additional relief beyond that sought by the United States when they intervened in the United States' enforcement action," although they could have "filed a complaint when they intervened."[2] Id. at 549, 550. The court also found that since the United States had prosecuted the action diligently, no basis for an award of attorney's fees existed. Id. at 550. The Court concluded that plaintiff-intervenors were not entitled to recover attorney's fees under Section 1365(d) "solely for aiding in the government's enforcement efforts." Id. at 550-51.

The United States Court of Appeals for the Eighth Circuit has held that a citizens' group "may still be entitled to an award of costs and a reasonable attorney's fee as a prevailing party under [Section 1365(d)] if its citizen suit was the catalyst for agency enforcement action that resulted in the cessation of Clean Water Act violations."[3] Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc., 138 F.3d 351, 357 (8th Cir. 1997), citing Atlantic States

---

[2] In contrast to the plaintiff-intervenors in Maine Dept. of Transportation, supra, 980 F.Supp. 546, the Coalition did file a complaint when it intervened in the present enforcement action. In the complaint, the Coalition specifically requested an award of "costs of litigation, including reasonable attorneys' and expert witness' fees pursuant to" Section 1365(d). Intervenor Complaint at 10.

[3] The Court of Appeals affirmed the district court's denial of attorney's fees in Comfort Lakes Association because the state environmental protection department had already begun to enforce permit conditions before the citizens intervened, and the citizens' group impeded the agency's enforcement efforts by suing it in state court and actively opposing a proposed settlement agreement. Id. at 357.

<u>Legal Found., Inc. v. Eastman Kodak Co.</u>, 933 F.3d 124, 128 (2d Cir. 1991); <u>Green Forest</u>, *supra*, 921 F.2d at 1402.

This litigation is not yet at the stage where the Court can assess the Coalition's contribution to the case or otherwise exercise its discretion to determine whether an award of attorneys' fees and costs is appropriate. But the Coalition is not barred as a matter of law from seeking an award of fees and costs. The Court will deny MSD's motion to dismiss the Coalition's request for costs and fees.

**B. <u>MIEC Motion to Intervene</u>**

The Missouri Industrial Energy Consumers (MIEC) is a non-profit trade association of businesses, some of which use the MSD system and consequently are ratepayers. MIEC seeks to intervene as a neutral, undesignated party for the limited purpose of participating in proceedings related to any remedy, including settlement negotiations, for the alleged violations of the Clean Water Act and NPDES permits at issue in this action. MIEC expressly states that one of its goals as proposed intervenor is to maintain MSD rates at "reasonable levels," but MIEC denies that its interest is limited to financial concerns. It claims that MIEC members have an interest in maintaining a reliable sewer system that can accommodate continued regional growth and is protective of the environment; in the manner and time-frame in which any upgrades or alterations are made; and in protecting regional rivers and streams.

MIEC claims that it has an unconditional right to intervene pursuant to 33 U.S.C. § 1365(b)(1)(B). It also asserts it meets the criteria for intervention as of right, under Rule 24(a)(1) and (2), Fed. R. Civ. P. Finally, MIEC moves, in the alternative, for permissive intervention under Rule 24(b), Fed. R. Civ. P.

The United States and the Coalition oppose MIEC's motion to intervene on several grounds.[4] They claim in part that MIEC does not have Article III standing. Because the Court lacks jurisdiction over the claims of a party that lacks standing, the Court will address this issue first.

"Article III standing is a prerequisite for intervention in a federal lawsuit." Curry v. Regents of the University of Minnesota, 167 F.3d 420, 422 (8th Cir. 1999), quoting Standard Heating & Air Conditioning Co. v. City of Minneapolis, 137 F.3d 567, 570, 573 (8th Cir. 1998). A party has standing to bring a claim "only if it has satisfied constitutional standing requirements and the court determines as a prudential matter that the party is the appropriate proponent of the legal rights raised." Nat'l Federation of the Blind of Missouri v. Cross, 184 F.3d 973, 979 (8th Cir. 1999)."The party invoking federal jurisdiction bears the burden of establishing the[] elements" of standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (citations omitted).

---

[4] Plaintiff the State of Missouri and defendant MSD have not responded to the motion, and the time allowed for doing so has expired.

A federal court only has jurisdiction to hear actual cases and controversies. <u>Id</u>. To show that an actual case or controversy exists, a party must show it has suffered "some actual or threatened injury that can be traced to the allegedly illegal conduct and that is capable of being redressed." <u>Nat'l Federation of the Blind</u>, 184 F.3d at 979 (citation omitted). An injury in fact is "an invasion of a legally protected interest that is concrete, particularized, and either actual or imminent." <u>Curry</u>, *supra*, <u>citing</u> <u>Lujan</u>, 504 U.S. 555.

> An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the individual participation of individual members in the lawsuit.

<u>Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.</u>, 528 U.S. 167, 181 (2000).

"[A]llegations of injury are sufficient to invoke the jurisdiction of a court." <u>Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.</u>, 484 U.S. 49, 65 (1987). "A suit will not be dismissed for lack of standing if there are sufficient 'allegations of fact' – not proof – in the complaint or supporting affidavits." <u>Id</u>., <u>quoting</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court presumes] 'that general allegations embrace those specific facts that are necessary to support the claim."

_Lujan_, *supra*, at 561, <u>quoting</u> <u>Lujan v. National Wildlife</u> <u>Federation</u>, 497 U.S. 871, 889 (1990).

The issue is thus whether, at this stage of the litigation, MIEC has sufficiently alleged an injury in fact to survive dismissal.

The parties dispute whether MIEC's claimed economic injury (higher rates) is sufficient to constitute an injury in fact. MIEC denies that its only interest is economic, as explained above. The Court finds that it is unnecessary to determine whether economic injury alone is sufficient to confer standing, because the proposed intervenor cannot show that any such injury is "imminent."

In <u>Lujan</u>, 504 U.S. 555, the Supreme Court found that "'some day' intentions - without any description of concrete plans, or indeed even any specification of *when* the some day will be - do not support a finding of the 'actual or imminent' injury that our cases require." <u>Id</u>. at 564. The "imminence" requirement is "concededly a somewhat elastic concept," but its purpose is "to ensure that the alleged injury is not too speculative for Article III purposes - that the injury is '*certainly* impending.'" <u>Id</u>. at 564 n 2, <u>quoting</u> <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 155 (1990). "[T]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102 (1983) (citations omitted). Mere "conjecture" or "speculation" is not sufficient. <u>Id</u>. at 108.

MIEC claims that "[i]f found liable as a result of" this action, "MSD will need to pass the cost of corrective actions

13

required to implement the remedy in this case to its ratepayers."
MIEC Statement of Interest at 3. "As MSD ratepayers, MIEC members
will directly bear the burden of any increase required to implement
the remedies adopted."<u>Id</u>. MIEC also claims, "If found liable as a
result of this proceeding, MSD will channel any civil fines and
environmental expenditures to its ratepayers." <u>Id</u>. at 7. Finally,
MIEC alleges that MSD does not have "stockholders who can bear some
of the costs needed for capital improvements and long term . . .
maintenance activities," and MSD has announced that it is
undertaking "a $3.7 billion, multi-year capital improvement and
replacement program." <u>Id</u>. MIEC states, "It is unclear the extent to
which this program will address the alleged violations" raised in
this action, "and whether additional funds will be needed in
addition to this $3.7 billion program to remedy the issues" alleged
in this action. <u>Id</u>.

According to the pleadings filed by MIEC, before the injury of
the rate increases MIEC fears can actually occur, several things
must happen: (1) MSD must be found liable of the violations
alleged, (2) civil penalties must be imposed on MSD, or it must be
required to undertake costly improvements projects, and (3) MSD
must determine to pass on the cost of such penalties or projects to
the ratepayers. Only then would MIEC be required to pay higher
rates. While the above sequence of events is surely not
inconceivable, the Court finds that it is too speculative and
remote to meet the actuality and imminence requirements for
standing purposes.

The Court also notes that, as the United States and the Coalition observe, MIEC members are not the only ratepayers in the MSD system. All ratepayers would have to bear the burden of increased rates, and thus MIEC cannot show that its alleged injury is particularized.

MIEC claims that it has an interest in maintaining a reliable sewer system that can accommodate continued regional growth and is protective of the environment; in the manner and time-frame in which any upgrades or alterations are made; and in protecting regional rivers and streams. The reliability of the sewer system is not at issue in this action for alleged violations of the Clean Water Act and NPDES permits. Because MSD's liability has not yet been decided, no upgrades or alterations have been proposed, it is not clear whether any will be required, and the manner and time-frame of any such alterations are a matter of pure conjecture and speculation. These alleged interests are thus insufficient to be injuries in fact.

Although MIEC claims an interest in protecting regional rivers and streams, it avowedly takes a neutral position on whether MSD has violated the Clean Water Act: "The MIEC is not intervening for the purpose of establishing or defending the liability of MSD (or any other party) for violations under the CWA." Statement of Interest at 8. Thus, MIEC is expressly not claiming that regional rivers and streams are not being protected, causing MIEC injury.

The Court thus finds that MIEC has not met its burden of alleging an imminent and particularized injury in fact sufficient

to confer Article III standing, and the Court lacks jurisdiction to consider its motion to intervene.

**C.** **Motion to Dismiss MSD's Counterclaims and to Strike MSD's Affirmative Defenses**

Missouri moves to strike MSD's affirmative defenses numbers 9, 10, 11, and 12 to the complaint, and to dismiss MSD's counterclaims.

The challenged affirmative defenses are as follows:

9. Due to Art. X, Sec. 22(a) of the Missouri Constitution, MSD has been unable to raise revenues necessary to comply with any judgment that may be entered against it.

10. Due to Art. VI, Sec. 26(b) and Art. X, Sec. 22(a) of the Missouri Constitution, MSD will be unable to raise revenues necessary to comply with any judgment that may be entered against it.

11. The relief sought by Plaintiffs constitutes in whole or in part an unfunded mandate prohibited by Art. X, Sec. 16 of the Missouri Constitution.

12. Pursuant to Sec. 309(e) of the Clean Water Act, 33 U.S.C. § 1319(e), the State of Missouri is liable for the payment of any judgment that may be entered against MSD and for the payment of any past or future expenses incurred as a result of complying with any judgment that may be entered against MSD.

MSD asserts two counterclaims against the State of Missouri. Counterclaim I alleges that the State of Missouri is liable for any judgment, or the cost of complying with any judgment in this action, under the Clean Water Act, Section 309(e); 33 U.S.C. § 1319(e). That statute provides:

Whenever a municipality is a party to a civil action brought by the United States under this section, the State in which such municipality is located shall be joined as a party. Such State shall be liable for payment of any judgment, or any

> expenses incurred as a result of complying with any judgment,
> entered against the municipality in such action to the extent
> that the laws of that State prevent the municipality from
> raising revenues needed to comply with such judgment.

33. U.S.C. § 1319(e).

MSD alleges that it is a municipality within the terms of the Clean Water Act, and that provisions of the Hancock Amendment to the Missouri Constitution (Mo. Constitution, Art. X, § 16; Art. X, § 22(a); and Art. VI, § 26(b)) prevent MSD from raising revenues needed to comply with such judgment. As a result, MSD claims, under Section 1319(e), *supra*, the State of Missouri is liable for the amount of any judgment and the costs of complying with that judgment. Count II of MSD's counterclaim alleges that, because of the foregoing, the State of Missouri has an equitable duty to indemnify MSD for the costs incurred defending this action and in complying with any judgment, including penalties and fines.

MSD opposes the motion to strike the affirmative defenses and the motion to dismiss on several grounds, which the Court will consider in turn.

### **Standing**

Missouri argues that MSD lacks standing to bring a claim under the Hancock Amendment, because only taxpayers can bring claims or raise affirmative defenses under the Amendment. MSD denies that taxpayers are the only parties who have standing to raise Hancock Amendment claims or defenses.

The relevant portion of the Hancock Amendment provides:

> Notwithstanding other provisions of this constitution or other law, any taxpayer of the state, county, or other political subdivision shall have standing to bring suit in a circuit court of proper venue and additionally, when the state is involved, in the Missouri supreme court, to enforce the provisions of [Missouri Constitution Art. X] sections 16 through 22, inclusive of this article, and, if the suit is sustained, shall receive from the applicable unit of government his costs, including reasonable attorneys' fees incurred in maintaining such suit.

Mo. Constitution, Art. X, Sec. 23.

"MSD is a political subdivision of the state."[5] Ring v. Metropolitan St. Louis Sewer Dist., 969 S.W.2d 716, 718 (Mo. banc 1998). As such, by the plain terms of Section 23, it has standing to enforce the provisions of the Hancock Amendment. See also Buchanan v. Kirkpatrick, 615 S.W.2d 6, 13 (Mo. banc 1981). The Court finds that MSD has standing to raise the Hancock Amendment as an affirmative defense and as a counterclaim.

**Sovereign Immunity**

Missouri asserts that it enjoys sovereign immunity to suit on MSD's counterclaims under the Eleventh Amendment to the United States Constitution, and that this Court lacks jurisdiction over MSD's counterclaims against the State. MSD contends that Missouri waived its Eleventh Amendment immunity when it voluntarily joined this action.

The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States

---

[5] MSD is also a municipal corporation. See Complaint at 3; Answer at 4.

by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

"A State's Eleventh Amendment immunity may be waived if a state actor with the power to bring suit in federal court invokes federal jurisdiction in a clear and voluntary manner. <u>Union Elec. v. Missouri Dept. of Conservation</u>, 366 F.3d 655, (8th Cir. 2004), <u>citing</u> <u>Lapides v. Bd. of Regents</u>, 535 U.S. 613, 619-22 (2002). In determining whether a state has clearly invoked federal jurisdiction, the relevant consideration is not the nature of the relief sought, but instead, the clarity of "the litigation act the State takes that creates the waiver." <u>Lapides</u>, 535 U.S. at 620. Thus, removal of a case to federal court is a clear, voluntary act that invokes federal jurisdiction and waives a state's Eleventh Amendment immunity, <u>id</u>., while entering a general appearance in federal court and defending against a suit is not such an act and does not waive a state's immunity. <u>Union Elec.</u>, 366 F.3d at 660.

Under 33 U.S.C. § 1319(e), "[w]henever a municipality is a party to a civil action brought by the United States under this section, the State in which such municipality is located shall be joined as a party." Missouri claims that this provision required it to join this action, and thus Missouri cannot be said to have voluntarily invoked federal jurisdiction. Missouri points to the fact that it raised no independent claims of relief when it joined the suit. The Court finds no merit in Missouri's position. Missouri joined this action as a plaintiff. Missouri could have been joined as a defendant and maintained its Eleventh Amendment immunity;

instead, it chose to join the suit as a plaintiff, thus clearly and voluntarily invoking this Court's jurisdiction. Its failure to bring independent claims is not relevant to the clarity of the "litigation act" of joining as a plaintiff. Missouri thus waived its Eleventh Amendment immunity.

**State Law Sovereign Immunity**

Missouri also claims that state law sovereign immunity also bars MSD's counterclaims. MSD responds that a federal claim, such as MSD's counterclaim under Section 309(e) of the Clean Water Act, cannot be defeated through assertions of state law sovereign immunity. The Court agrees.

The United States Congress is "the supreme sovereign on matters of federal law." Owen v. City of Independence, Mo., 445 U.S. 622, 647 (1980). When Congress adopts an act, it speaks "for all the people and all the states, and thereby establishe[s] a policy for all." Howlett v. Rose, 496 U.S. 356, 371 (1990).

The Clean Water Act defines a municipality to include a "public body created by or pursuant to State law and having jurisdiction over disposal of sewage, industrial wastes, or other wastes." 33 U.S.C. § 1362(4). Consequently, MSD is a municipality within the terms of the Clean Water Act. Section 309(e) of the Act imposes liability on the state in which a municipality is located for judgments under the Act, to the extent that a state law prevents the municipality from raising revenues needed to comply with the judgment. 33 U.S.C. § 1319(e). Congress thus has waived the State's sovereign immunity in such circumstances. Accordingly,

MSD's claim under Section 309(e) is not barred by common law sovereign immunity.

Missouri also asserts that common law sovereign immunity bars MSD's counterclaim that the Hancock Amendment has prevented it from raising revenues necessary to comply with the Clean Water Act, or with any judgment in this case. The only basis Missouri has identified for dismissing MSD's claims under the Hancock Amendment on jurisdictional grounds is that MSD lacks standing because it is not a taxpayer. The Court has already determined that MSD has standing to sue to enforce the Hancock Amendment. The Court thus finds that state common law sovereign immunity does not bar MSD's counterclaims or affirmative defenses under the Hancock Amendment.

### Failure to Exhaust Administrative Remedies

Missouri alleges that in its counterclaims, MSD "in effect" claims that the NPDES permit conditions cannot be enforced against it, and that MSD is thus "in reality, challenging the constitutionality of" the NPDES permits. Missouri thus concludes that MSD can only attack the validity of the NPDES permits by appealing the permit conditions to the Administrative Hearing Commission and the Missouri Clean Water Commission. Because MSD failed to do so, Missouri argues, it failed to exhaust available administrative remedies, and this Court lacks jurisdiction over MSD's counterclaims to the extent they relate to the NPDES permits at issue.

MSD responds that it is not challenging the terms of the NPDES permits, but rather, is contesting the enforcement of those

permits, and thus there are no administrative remedies to exhaust. The Court agrees. In an action challenging a permit's terms or conditions, or the denial or issuance of a permit, the failure to exhaust administrative remedies deprives the Court of jurisdiction. See <u>City of St. Peters v. Dept. of Natural Resources of State of Missouri</u>, 797 S.W.2d 514, 516-17 (Mo. Ct. App. 1990); <u>City of Ames, Iowa v. Reilly</u>, 986 F.2d 253 (8th Cir. 1993). As MSD notes, however, it is not challenging the denial, issuance, or terms of the NPDES permits referred to in the complaint. Consequently, it is not required to exhaust administrative remedies, and the Court is not deprived of jurisdiction to consider its challenge to the NPDES enforcement action.

**Hancock Amendment**

Missouri claims that the Hancock Amendment provisions cited by MSD in its counterclaims and affirmative defenses do not, as a matter of fact and law, bar MSD from raising rates to cover the expenses associated with a judgment against it. MSD disputes whether the Hancock Amendment applies to costs incurred through an action enforcing compliance with federal law, and whether any such expenses can constitute a "new or expanded" activity or a shifting of the tax burden under the Hancock Amendment.

Even if a party has standing to raise a claim or defense under the Hancock Amendment, the party "must still establish that the case is ripe." <u>Brooks v. State</u>, 128 S.W.3d 844, 848 (Mo. banc 2004). Ripeness means that "'the parties' dispute is developed sufficiently to allow the court to make an accurate determination

22

of the facts, to resolve a conflict that is presently existing and to grant specific relief of a conclusive character.'" Id., quoting Mo. Health Care Ass'n v. Attorney General of the State of Mo., 953 S.W.2d 617, 621 (Mo. banc 1997). "Under Hancock, a case is not ripe without specific proof of new or increased duties and increased expenses, and these elements cannot be established by mere 'common sense' or 'speculation and conjecture.'" Id., quoting Miller v. Director of Revenue, 719 S.W.2d 787, 789 (Mo. banc 1986).

This action is not sufficiently ripe to allow the Court to determine the facts relevant to MSD's counterclaims and defenses under the Hancock Amendment or to resolve a presently existing conflict regarding the Amendment. MSD asserts that new or increased duties and expenses will be required if a judgment against MSD results from this action, and that the Hancock Amendment would render the State of Missouri, and not MSD, liable for those new duties and expenses. MSD has not presented specific proof of new or increased duties or expenses. The Court thus concludes that MSD's affirmative defenses based on the Hancock Amendment (numbers 9, 10, 11 and 12) are not ripe and must be dismissed. Likewise, MSD's counterclaims will be dismissed to the extent they rely on the Hancock Amendment.

Missouri moves to strike MSD's affirmative defenses numbers 9 through 12 of the Coalition's complaint in intervention. Those defenses correspond to the Hancock-Amendment-based defenses discussed above, and will be struck for the same reasons.

## D. **Motion to Strike Defendant's Answer to Intervenor Complaint**

The Coalition moves to strike MSD's affirmative defenses numbers 2, 3, 5, and 17 to claims in the complaint in intervention. Those defenses assert that it was impossible or impracticable for MSD to prevent the violations alleged in the complaint in intervention (No. 2); that MSD does not have the financial capability to prevent the violations (No. 3); that MSD has negotiated in good faith with the United States and State of Missouri to agree on a schedule for complying with the federal and state Clean Water Acts (No. 5); and that MSD has acted with due care and conducted itself reasonably and within applicable law with respect to the alleged violations (No. 17). The Coalition argues that these affirmative defenses are relevant to MSD's state of mind and as such are legally insufficient, because the Clean Water Act is a strict liability statute, and the defendant's state of mind is inapposite.[6]

The United States moves to stay the Court's ruling on the Coalition's motion to strike until after the parties have engaged in mediation. The Coalition does not oppose the request, nor do MSD and the State of Missouri. The Court supports the parties' efforts

---

[6] MSD observes that the motion to strike was not timely filed and should be denied on that basis. MSD filed its answer to the complaint in intervention on January 16, 2008. Under Rule 12(f), Fed. R. Civ. P., any motion to strike was due on February 5, 2008. Allowing three days for service, pursuant to Rule 6(d), Fed. R. Civ. P., any motion to strike was due on February 8, 2008. The Coalition's motion to strike was filed on February 15, 2008, and was thus untimely. The Court will not deny the motion to strike on that basis, however, in the interest of justice.

to resolve the issues in this case through mediation and agrees that ruling on the motion to strike would be premature. Accordingly, the Court will grant the United States' motion to stay consideration of the Coalition's motion to strike.

Accordingly,

**IT IS HEREBY ORDERED** that the defendant's motion to dismiss plaintiff-intervenor's requests for civil penalties and costs of litigation and attorney's fees [# 37] is **granted in part** and **denied in part.**

**IT IS FURTHER ORDERED** that the motion of the Missouri Industrial Energy Consumers to intervene [# 42] is **denied.**

**IT IS FURTHER ORDERED** that the State of Missouri's motion to dismiss defendant's counterclaims and strike affirmative defenses numbers nine through twelve to the Complaint [# 26] is **granted in part** and **denied in part.**

**IT IS FURTHER ORDERED** that the State of Missouri's motion to dismiss defendant's counterclaims and strike affirmative defenses numbers nine through twelve to the Complaint in Intervention [# 47] is **granted in part** and **denied in part.**

**IT IS FURTHER ORDERED** that the motion of the United States to stay the ruling on the plaintiff-intervenor's motion to strike defendant's affirmative defenses [# 76] is **granted.**

**IT IS FURTHER ORDERED** that consideration of the plaintiff-intervenor's motion to strike defendant's affirmative defenses [# 56] is **stayed** pending completion of mediation proceedings.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 12th day of September, 2008.