UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. 4:07-CV-1120 (CEJ) ) ) |
| THE METROPOLITAN ST. LOUIS SEWER DISTRICT, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action involves claims by the United States, joined by the State of Missouri, against the Metropolitan St. Louis Sewer District (MSD) for violations of the Clean Water Act (CWA), 33 U.S.C. § 1251, et seq. Before the Court is the motion of the United States for entry of a consent decree. Plaintiff-intervenor Missouri Coalition for the Environment Foundation (Coalition) and MSD have signed the proposed consent decree. The State is not a party to—but supports the entry of—the consent decree. The State remains a party to this action only as required by 33 U.S.C. § 1319(e).[1] The Court has also received public comments submitted in response to the proposed consent decree, as well as, the United States' responses to those comments.

I.   Background

MSD is a municipal corporation and political subdivision of the State of Missouri that provides sewer and wastewater management for 1.4 million residents in the City

---

[1] Section 1319(e) requires that the State be joined as a party in an CWA action against a municipality.

of St. Louis and St. Louis County.  On June 11, 2007, the United States and State of Missouri filed a joint complaint seeking civil penalties and injunctive relief for the discharge of untreated wastewater and sewage by MSD. The United States alleges that MSD has committed numerous violations of the CWA and the National Pollutant Discharge Elimination System (NPDES) permits issued by the Missouri Department of Natural Resources under Missouri's NPDES permit system, which has been approved by the United States. See 33 U.S.C. § 1342.

The alleged violations by MSD stem from two types of overflows or discharge points in the MSD wastewater management system: (1) sanitary sewage overflows (SSOs) and (2) combined system overflows (CSOs).  SSOs are unpermitted discharge points from MSD's separate, dedicated sanitary waste system.  CSOs allow discharge from MSD's combined sanitary-storm water management system; some CSOs were constructed under NPDES permits issued by Missouri Department of Natural Resources. Plaintiffs estimate that between 2000 and 2006 these overflows have resulted in the discharge of over 500 million gallons of raw sewage into the area's streams and rivers.

This action has been stayed since July 30, 2009 while the parties engaged in mediation. On December 23, 2011, the United States filed a motion for entry of a proposed consent decree. MSD and the Coalition have filed memoranda supporting the entry of the consent decree. On August 10, 2011, the United States published notice of the proposed consent decree in the Federal Register. Due to several requests for extension, the public comment period was extended to sixty days. In response to the proposed settlement, the United States received 23 sets of public comments, which have been submitted to the Court.  The majority of these (15 comments) supported the entry of the proposed consent decree.  The remaining comments raised numerous

issues and concerns with regard to the proposed consent decree, to which the United States responded in an attachment to its memorandum supporting entry of the decree. (Doc. #142-3).

The proposed consent decree provides for injunctive relief that includes numerous system-wide infrastructure projects that will be completed in the next 23 years at a cost of approximately $4.7 billion.  In addition, the decree provides that MSD will pay $1.2 million in civil penalties for past violations to the United States and $116,050 to the Coalition for reimbursement of its litigation costs, including attorneys' fees.

II.     Legal Standard

"Before entering a consent decree, this Court must find that the settlement is procedurally fair, substantively fair, reasonable, and consistent with [the governing statute]." United States v. Union Elec. Co., 934 F. Supp. 324, 327 (E.D. Mo. 1996) aff'd, 132 F.3d 422 (8th Cir. 1997). The Court does not have the power to modify a settlement after it has been signed by the parties; it may only accept or reject the document as a whole. United States v. Jones & Laughlin Steel Corp., 804 F.2d 348 (6th Cir. 1986). Judicial deference to a settlement "is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys substantial expertise in the environmental field." United States v. Akzo Coatings, Inc., 949 F.2d 1409, 1436 (6th Cir. 1991). The Eighth Circuit has also emphasized that "[w]e therefore exercise restraint on review —because we are deferring both to the EPA's inherent experience and expertise in handling such matters and to the district court's carefully-exercised informed discretion." United States v. BP Amoco Oil PLC, 277 F.3d 1012, 1019 (8th Cir. 2002);

see also Union Elec. Co., 132 F.3d at 430 (When considering a district court's approval of a consent decree the reviewing court "must consider the EPA's expertise in these issues."). Finally, "it is within the sound discretion of the trial court to decide whether an evidentiary hearing is necessary before ruling on a proposed consent decree." United States v. Metro. St. Louis Sewer Dist. (MSD), 952 F.2d 1040, 1044 (8th Cir. 1992).

   III.   Discussion

After reviewing the proposed consent decree, the comments submitted by the public, and the memoranda in support of the consent decree, the Court finds that entry of the consent decree is appropriate.

   A.   Fairness

"To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gage its candor, openness, and bargaining balance." Union Elec. Co., 934 F. Supp. at 327 (citing United States v. Cannons Eng'g Corp., 899 F.2d 79, 86 (1st Cir. 1990)). "Substantive fairness introduces into the equation concepts of corrective justice and accountability: a party should bear the cost of the harm for which is it legally responsible." United States v. BP Amoco Oil PLC, 277 F.3d 1012, 1020 (8th Cir. 2002).

The record indicates that the parties engaged in more than two years of intensive mediation in negotiating the terms of the proposed consent decree. The proposed consent decree was published in the Federal Register, the public was given sixty days to submit comments, and MSD held multiple community meetings in order to inform the public about the contents of the proposed settlement and answer questions from the public. In a lengthy memorandum, the United States has

summarized and responded to every substantial issue raised by the public comments it received. In light of these procedures, the Court finds the consent judgment to have been negotiated in good faith and to be procedurally fair.

The Court also finds the proposed consent to be substantively fair. The remedial measures provided for in the consent decree are reasonably gauged to remedy MSD's ongoing violations of the CWA. The injunctive relief provided for in the proposed consent decree is consistent with the terms of other settlements approved between the EPA and large municipal sewer systems. The civil penalty to be paid the United States, is also consistent with other penalties assessed for similar violations. The Coalition—which intervened in this matter as a citizen under 33 U.S.C. § 1365 and can be considered a prevailing party—participated substantially in this matter, entitling it to recovery of its litigation costs. See U.S. E.P.A. v. City of Green Forest, Ark., 921 F.2d 1394, 1402 (8th Cir. 1990). Finally, the Court has reviewed the comments submitted by the public, along with the United States' responses, and finds no legal reason to reject the proposed consent decree.

   B.  Reasonableness

"When determining whether a consent decree is reasonable, the court must consider the technical adequacy of the remedies, the adequacy of the settling defendants' obligations to cover the response costs and the savings represented by settlement over litigation." United States v. Mallinckrodt, Inc., 4:02CV01488, 2007 WL 1231665 (E.D. Mo. 2007) (citing Cannons, 899 F.2d at 90).

Here, the parties avoided significant risk and litigation costs in negotiating the proposed consent decree.  Although MSD and its rate-payers will incur substantial costs in implementing the proposed consent decree, this cost will be offset by the

public benefit that will be gained through infrastructure improvements and compliance with the CWA.  Thus, the Court finds the proposed consent decree is not "manifestly unreasonable." BP Amoco Oil PLC, 277 F.3d at 1019.

### C. Consistence with the CWA

The purpose of the CWA is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 52 (1987).  Considering the scope of the relief provided for and the financial constraints facing MSD, the Court finds the proposed consent decree to be consistent with the objectives of the CWA.

\* \* \* \* \*

Based on the foregoing,

**IT IS HEREBY ORDERED** that the motion by the United States to approve the proposed consent decree [Doc. #141] is **granted**.

The consent decree will be entered separately this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 27th day of April, 2012.