UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. 4:07-CV-1120 (CEJ) ) |
| THE METROPOLITAN ST. LOUIS SEWER DISTRICT, | ) ) ) ) ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This action involves claims by the United States, joined by the State of Missouri, against the Metropolitan St. Louis Sewer District (MSD) for violations of the Clean Water Act (CWA), 33 U.S.C. § 1251, et seq. The United States, plaintiff-intervenor Missouri Coalition for the Environment Foundation, and MSD have requested entry of a consent decree providing for approximately $4.7 billion in wastewater management improvements that will be implemented by MSD over the next 23 years. The State is not a party to—but does not oppose—the proposed settlement. Before the Court is the motion by the State to dismiss without prejudice its claims against MSD. MSD agrees that the State should be allowed to dismiss its claims, but requests that the Court impose conditions on the State's dismissal.

I.    Background

MSD is a municipal corporation and political subdivision of the State of Missouri that provides sewer and wastewater management for 1.4 million residents in the City of St. Louis and St. Louis County. On June 11, 2007, the United States and State of

Missouri filed a joint complaint seeking civil penalties and injunctive relief for the discharge of untreated wastewater and sewage by MSD. The United States alleges that MSD has committed numerous violations of the CWA and the National Pollutant Discharge Elimination System (NPDES) permits issued by the Missouri Department of Natural Resources under Missouri's NPDES permit system, which has been approved by the United States. See 33 U.S.C. § 1342. The United States has filed this suit under the enforcement provisions contained in 33 U.S.C. § 1319(b) and (d). The State has joined this action pursuant to 33 U.S.C. § 1319(e), which requires a state to be joined as a party when a CWA action is filed against a municipality.

With its answer, MSD asserted two counterclaims against the State. The first claimed that the State was liable under 33 U.S.C. § 1319(e) because MSD was unable to comply with the CWA due to Missouri law that prohibited it from raising its rates. The second claim sought indemnity from the State on equitable grounds under a similar theory, *i.e.*, that it was prevented from operating a CWA-compliant system due to State law so the State should indemnify it. The State filed a motion to dismiss MSD's counterclaims as barred by sovereign immunity and the Eleventh Amendment. The Court denied the State's motion to dismiss on sovereign immunity grounds, but determined MSD's counterclaims were not ripe because it was uncertain whether Missouri law would effect the enforcement of any future judgment or consent decree.

On interlocutory appeal, the Eighth Circuit affirmed, holding that the State had waived its sovereign immunity by acting as a "coplaintiff rather than passively waiting for the United states to seek indemnification from it under § 309(e)." United States v. Metropolitan St. Louis Sewer Dist., 578 F.3d 722, 726 (8th Cir. 2009). Due to the

interlocutory nature of the appeal, the issue of ripeness was not considered by the Eighth Circuit and MSD's counterclaims against the state remain dismissed.

Now, following two years of mediation in which the state actively participated as co-plaintiff, the State requests that it be allowed to dismiss its claims without prejudice. This, it claims, will allow MSD and the United States to move forward with the implementation of their settlement while allowing the State to preserve any separate claims it may have against MSD. The State will also not be bound by the terms of the proposed consent decree and need not comply with the dispute resolutions procedures set forth therein.

MSD opposes dismissal of the State's claims without prejudice unless the Court imposes conditions that it argues are necessary to protect it from prejudice that will result from the State's last-minute abandonment of its claims. Specifically, MSD requests 7 different conditions:

> (1) If the State re-files its claims in this Court or in state court, the State shall pay MSD's costs and reasonable fees incurred in this action; (2) The State shall diligently and timely work on issues related to the Consent Decree, the Long-Term Control Plan, the SSO Control Master Plan due by December 31, 2013 and other programs required by the Consent Decree, wastewater treatment plant permits, and all other necessary state-delegated requirements for implementing the Consent Decree; (3) The State shall implement its regulations, guidance, and other requirements in a manner that allows MSD to comply with the Consent Decree; (4) The State may not raise sovereign immunity as a defense in any future action related to MSD's counterclaims; (5) MSD preserves all its defenses, whether raised or not in this action; (6) The Court retains jurisdiction over all issues related to or covered by the Consent Decree, and will allow for removal of any claims filed in state court that are addressed in the Consent Decree; and (7) The State remains a party in this action, pursuant to Section 309(e).

(Doc. #152, p. 11-12). These conditions, MSD argues, are necessary to alleviate the potential prejudice that may result from State's dismissal. MSD also argues that the

State's dismissal motion should be governed by the test set forth in Paulucci v. City of Duluth, 826 F.2d 780, 782 (8th Cir. 1987).

The State contends that the conditions sought by MSD are not warranted by the test set forth in Paulucci. Id. Specifically, the State claims that its participation in this case was involuntary, that it brought no independent claims, and that MSD did not incur any additional expense due to its status as a plaintiff in this action.

The parties do not dispute that the State must remain a party to this action pursuant to 33 U.S.C. § 1319(e).

## II.  The Clean Water Act

The Clean Water Act, 33 U.S.C. § 1251 et seq., was enacted in 1972 "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). In order to achieve these goals, § 301(a) of the CWA makes unlawful the discharge of any pollutant into navigable waters except as authorized by specified sections of the CWA. 33 U.S.C. § 1311(a). The CWA prohibits the discharge of any pollutant subject to exceptions established by issuance of National Pollution Discharge Elimination System (NPDES) permits. Pursuant to § 402(a), the Administrator of the Environmental Protection Agency (EPA) may issue permits authorizing the discharge of pollutants in accordance with specified conditions. 33 U.S.C. § 1342(a). Pursuant to § 402(b), each State may establish and administer its own permit program if the program conforms to federal guidelines and is approved by the Administrator. 33 U.S.C. § 1342(b). The CWA calls for the Administrator to suspend the issuance of federal permits as to waters subject to an approved state program. 33 U.S.C.§ 1342(c)(1).

The State operates an approved NPDES permit system, however, the United States retains the authority to oversee the NPDES permit system and enforce any provision of the CWA as provided for in 33 U.S.C. § 1319. See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 52 (1987).

Where the alleged non-compliance is by a municipality, such as MSD, § 309(e) of the CWA provides that:

> [w]henever a municipality is a party to a civil action brought by the United States under this section, the State in which such municipality is located shall be joined as a party. Such State shall be liable for payment of any judgment, or any expenses incurred as a result of complying with any judgment, entered against the municipality in such action to the extent that the laws of that State prevent the municipality from raising revenues needed to comply with such judgment."

33 U.S.C. § 1319(e).

### III. Discussion

Despite MSD's arguments to the contrary, the Court finds that the standard from Paulucci, 826 F.2d 780, does not control the State's motion. While the State clearly has an interest in this action as primarily responsible for water pollution enforcement, its *legal* interest is merely that of a potentially-liable defendant under 33 U.S.C. § 1319(e). A close reading of the complaint indicates that the State has not asserted any claim for relief except to arbitrarily assume the role of co-plaintiff based upon the mandate that it be joined "as a party" under § 1319(e). Section 1319(b) and (d), under which the United States has brought this action, do not provide a means by which the State could assert a claim under the CWA. See State of Cal. v. U.S. Dept. of Navy, 845 F.2d 222, 225 (9th Cir. 1988) ("Congress intended § 309 to be utilized solely by the Administrator, except to the extent that § 505(a) expressly authorizes citizens to step into the shoes of the Administrator through § 309(d) to obtain civil

penalties in citizen suits."). Had the State wanted to assert an independent claim, it could have done so as a citizen under 33 U.S.C. § 1365, through state-law provisions and pendent jurisdiction under 28 U.S.C. § 1367, or potentially under 33 U.S.C. § 1342(b)(7) to enforce the requirements of Missouri's NDPES permit system.[1] Having declined to assert an independent claim, however, the State's only basis for proceeding as a plaintiff in this action is under 33 U.S.C. § 1319(e).

Now realizing that this politically-favorable characterization may involve some legally-unfavorable consequences, the State wishes to abandon its role as a plaintiff. Cf. U.S. E.P.A. v. City of Green Forest, Ark., 921 F.2d 1394 (8th Cir. 1990) (discussing preclusion); Harmon Industries, Inc. v. Browner, 191 F.3d 894 (8th Cir. 1999) (same); Metropolitan St. Louis Sewer Dist., 578 F.3d at 726 (waiver of sovereign immunity); Fed. R. Civ. P. 13 (compulsory versus permissive counterclaims, crossclaims). Such a move, it hopes, will preserve its ability to enforce Missouri's water quality provisions in a separate action, a practice known as "underfiling." See Alex P. Abrams, Why "Underfiling" by States Can and Should Be Used to Enforce Environmental Regulations, 31 B.C. ENVTL. AFF. L. REV. 403, 404-05 (2004) (federal enforcement following state

---

[1] Several courts have suggested that a State authorized to issued NPDES permits under the CWA must pursue judicial enforcement in state court. See Dist. of Columbia v. Schramm, 631 F.2d 854, 860-61 (D.C. Cir. 1980) (noting that the legislative history of the CWA indicated that state enforcement actions would proceed in state court.); State of Cal. v. U.S. Dept. of Navy, 845 F.2d 222, 224 (9th Cir. 1988) ("Section 309(a), (b), and (f) specifically authorize the *Administrator* to bring various compliance actions"); U.S. v. City of Hopewell, 508 F.Supp. 526 (D. Va. 1980) (state cannot bring claim under 1319(b)). But the Supreme Court has also suggested in dicta that a state may bring CWA claims in federal court under 33 U.S.C. § 1342(b)(7). Gwaltney of Smithfield, Ltd., 484 U.S. at 52, but see U.S. Dept. of Energy v. Ohio, 503 U.S. 607(1992) (enforcement of state law authorized under CWA does not "arise" under federal law). The State may also bring a claim under the citizen suit provision of the CWA. Id.

action is considered "overfiling"). In contrast, a prior round of CWA enforcement proceedings between these same parties began with the 1986 entry of a consent decree between State and MSD in state court, followed by a federal enforcement action filed in 1988, which named the State as a defendant. United States v. Metro. St. Louis Sewer Dist. (MSD), 883 F.2d 54 (8th Cir. 1989). There, the State was granted leave to be realigned as a plaintiff in the federal action, and after a consent decree was negotiated, the previously-entered state court decree was amended to be consistent with the federal decree. United States v. Metro. St. Louis Sewer Dist. (MSD), 952 F.2d 1040, 1043 (8th Cir. 1992). Here, the State seeks to extricate itself from the federal proceeding and the proposed consent decree submitted by the parties.

Having reviewed the State's and MSD's arguments, the Court finds that realigning the State as a defendant without special conditions is appropriate. "Section 309(e) undoubtedly compels [the State] to become a party in [this action]." Metro. St. Louis Sewer Dist., 578 F.3d 722, 726 (citing 33 U.S.C. § 1319(e)). But, as noted in the 1988 enforcement action, "the alignment of the State is irrelevant to the authority of the court to enter a consent decree." Metro. St. Louis Sewer Dist. (MSD), 952 F.2d 1040, 1044. As such, the State's motion is seeking realignment, not dismissal. This is doubly so because the State must remain a party to this action and because there are no separate claims by the State to dismiss. As its only legal interest in this matter is—and will continue to be—as a potentially-liable party under 33 U.S.C. § 1319(e), the State's motion, as construed, will be granted.

Even assuming the Paulucci factors were relevant to the State's motion, they would not support the conditions MSD asks the Court impose. Paulucci, 826 F.2d 780. Rule 41(a)(2) provides that an action may be dismissed by the plaintiff after an answer

has been filed and without all the consent of all parties "only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "The purpose of Rule 41(a)(2) is primarily to prevent voluntary dismissals which unfairly affect the other side." Paulucci, 826 F.2d 780, 782. The Eighth Circuit looks to four factors in deciding whether a Rule 41(a)(2) motion should have been granted: (1) the defendant's effort and the expense involved in preparing for trial; (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action; (3) insufficient explanation of the need to take a dismissal; and (4) the fact that a motion for summary judgment has been filed by the defendant. Id. at 783 (quoting Pace v. Southern Express Co., 409 F.2d 331, 334 (7th Cir.1969)).

Here, the basis for the State's motion to dismiss without prejudice has been recognized by the Eighth Circuit as a valid reason for dismissal. See Cahalan v. Rohan, 423 F.3d 815, 818 (8th Cir. 2005) (affirming dismissal without prejudice where plaintiff "is not seeking to avoid an adverse judgment or bring the same claim in a more favorable forum; he is attempting to preserve a similar, but distinct claim under [another statute]."). Although the State voluntarily joined this action as a plaintiff, this does not require that it join in a consent decree that is contemplated to govern MSD's compliance with the CWA over the next 23 years. The other factors recognized in Paulucci do not support MSD's position because this case was stayed by agreement of the parties prior to formal discovery, summary judgment motions have not been filed, and no trial date has ever been set. Paulucci, 826 F.2d at 782.

Finally, the claims of prejudice by MSD do not justify the conditions it requests. For one, Fed. R. Civ. P. 41(d) already provides that the State may be required to pay the costs of this action if it refiles this action. Also, whether the consent decree entered

in this case has any preclusive effect against the State will be determined by a later court if and when the State files a related enforcement action. See Harmon Industries, Inc. v. Browner, 191 F.3d 894 (8th Cir. 1999) (discussing claim preclusion and the "laboring oar" test set forth in Montana v. United States, 440 U.S. 147 (1979)). Last, although the State may be able to re-raise its sovereign immunity arguments, nothing prevents MSD from retaining the benefit of the Eighth Circuit's August 3, 2009 ruling through *stare decisis*. Metro. St. Louis Sewer Dist., 578 F.3d 722.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of the State of Missouri to dismiss its claims without prejudice [Doc. #145] is **granted in part**.

**IT IS FURTHER ORDERED** that the State of Missouri shall be realigned as a defendant in this action solely for the purpose of determining its potential liability under 33 U.S.C. § 1319(e).

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 27th day of April, 2012.